This is an appeal from a summary judgment in favor of Union Pacific Resources *Page 703 
Company,[1] Dowell Schlumberger, Inc., and Kennedy Agriculture and Supply, Inc., in an action filed by the McWilliamses for damages based on trespass, negligence, wantonness, and strict liability. The trial court entered summary judgment with regard to all counts, holding that the statutory period of limitations had run. Because the applicability of the statute of limitations argument applies to all parties, hereinafter all appellees shall be referred to collectively as "Union Pacific." We reverse and remand.
In 1984, Union Pacific contracted to drill a wildcat oil well on the McWilliamses' property. After drilling was completed, the well was determined to be a "dry hole," and plugging and abandonment operations began in November of that year. Union Pacific contracted with Kennedy Agriculture to pump the drilling fluids from the reserve pit back into the well and contracted with Dowell Schlumberger to plug the well. These operations were completed on November 15, 1984. In the spring of 1986, the McWilliamses noticed that water was seeping from the reclaimed ground in the area overlying the site of the well. In July 1986, this leakage was discovered to be saltwater and, after Union Pacific and the State Oil and Gas Board were notified, Union Pacific was ordered to replug the well and was fined $1,500 for violation of the Board rules and regulations regarding the plugging and abandonment of the well.[2]
As a result of damage to their property, the McWilliamses sued Union Pacific, for damages based on trespass, negligence, wantonness, and strict liability. The complaint was filed in June 1987; the trial judge granted Union Pacific's motion for summary judgment on all counts. With regard to the McWilliamses' trespass claim, the trial judge stated that the McWilliamses' case, at most, gave rise to an action in trespass on the case, which is governed by a two-year statute of limitations, rather than in trespass, which is governed by a six-year statute of limitations.[3] The McWilliamses appeal, contending that their cause of action is subject to the six-year statute of limitations and that, in the alternative, the trial judge erred in determining that the two-year statute began to run on the date that the well was plugged and abandoned, i.e., November 15, 1984. Their argument with regard to the date the statute of limitations began to run is also applicable to their negligence, wantonness, and strict liability claims. Because, for the following reasons, we hold that the applicable statute of limitations began to run later than the November 15, 1984, date found to be applicable by the trial judge, we consider it unnecessary to discuss whether the McWilliamses' claim sounds in trespass or in trespass on the case.
 "The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action 'accrues.' The cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon.
 " 'We have held that the statute begins to run whether or not the full amount of damages is apparent at the time of the first legal injury. In Kelly v. Shropshire, 199 Ala. 602, 75 So. 291, 292 (1917), the rule was stated as follows:
 " ' "If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrued and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and *Page 704 
the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action. Nor does plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered."
 " 'Nor do the cases cited to us by appellant Home modify this rule. Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925) (flooding of basement causing rusting of heating plant) and West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909) (underground mining causing subsidence of surface land) merely state the well established rule that the statute will not begin to run until some injury occurs which gives rise to a maintainable cause of action.
" '. . . .'
 "Home Insurance Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 608, 285 So.2d 468, 473 (1973).
 "The class of cases exemplified by Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925), and West Pratt Coal Co. v. Dorman, expresses the same rule although in a different context, and the basic principle is the same. Thus, there are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiff's injury only comes as result of, and in furtherance and subsequent development of, the act defendant has done. In such cases, the cause of action "accrues,' and the statute of limitation begins to run, 'when, and only when, the damages are sustained.' Over sixty years ago, Justice Sayre so expressed it in his opinion for the Court in Kelly, et al. v. Shropshire, 199 Ala. 602, 75 So. 291 (1917).
 "In West Pratt Coal plaintiff's upper soil cracked open and settled down several years after mining had taken place beneath the surface. Plaintiff brought suit within one year after the soil settled. In stating that the statute had not run, the Court held that the plaintiff had nothing of which to complain until the enjoyment of the lot was interfered with by the settling of the soil, i.e., no cause of action had 'accrued' until that time."
Garrett v. Raytheon Co., 368 So.2d 516, 518-19 (Ala. 1979). (Emphasis added in Garrett.) We find the present case analogous to those cases mentioned in Garrett wherein the damage complained of occurred at a date later than the actions of the defendants. In this case, the McWilliamses' cattle were not destroyed, nor was the vegetation on their land killed, at the time Union Pacific is alleged to have improperly plugged the well in question. In West Pratt Coal Co. v. Dorman, 161 Ala. 389,49 So. 849 (1909), the plaintiff's damage was sustained years after the incident that caused that damage. Garrett v.Raytheon Co., supra, at 519. In the case sub judice, likewise, the McWilliamses sustained damage to their land at a later date than the plugging of the well. The statutory period of limitations should not be held to begin running as of the plugging of the well, but, rather, on the date when the damage was allegedly sustained by the McWilliamses.
Therefore, the judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
MADDOX, J., concurs specially.
[1] Union Pacific Resources Company was initially known as Champlin Petroleum Company, but the name was changed on May 12, 1987.
[2] It was determined during the replugging operations that a surface plug had not been placed in the well (or had dissolved) and that, as a result, the surface casing had split. Salt water was found to be leaking from inside the surface casing of the well at the rate of approximately 10 barrels per day.
[3] The one-year statute of limitations for trespass on the case (§ 6-2-39, Ala. Code 1975) was repealed effective January 9, 1985, and that action was transferred to the two-year limitations statute, § 6-2-38. See Act 85-39, Ala. Acts
1984-85.