While I concur with the majority in reversing the trial court's determination that the statutory limitations period began to run as of the plugging of the well, I must comment specially on this Court's direction to the trial court to find that the limitations period should begin to run when the cattle and vegetation died. *Page 705 
As I understand it, there are two lines of cases dealing with the tolling of the statute of limitations where the damages became apparent only sometime after the actual wrong was committed. The first line of cases deals with wrongful acts that cause a legal injury to the plaintiff although that injury is not apparent. Kelly v. Shropshire, 199 Ala. 602, 75 So. 291
(1917); Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438 (1972);Garrett v. Raytheon Co., 368 So.2d 516 (Ala. 1979).
In each of those cases, not only was the act itself a legal injury to the plaintiff, but the plaintiff failed to file suit within any reasonable time after his injury had occurred. For example, in Raytheon Co., the plaintiff was exposed to radiation at his work place, his last exposure to radiation occurring over 20 years before his injury was diagnosed and he brought suit. In that case, this Court settled the question of the "accrual" of the plaintiff's claim in his radiation-exposure case for purposes of determining when the applicable limitations period begins to run. The Court stated:
 " ' "If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight. . . . [The] plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by the defendant, [does not] postpone the running of the statute until the tort or injury is discovered." ' "
Garrett, 368 So.2d at 519, quoting Kelly v. Shropshire,199 Ala. 602, 75 So. 291 (1917), as quoted in Home Ins. Co. v.Stuart-McCorkle, Inc., 291 Ala. 601, 608, 285 So.2d 468, 473
(1973) (emphasis added).
Garrett was legally injured as of the date of his last exposure to radiation, when there was a "completed injury," not when he discovered his injury 20 years later.
In contrast, the second line of cases deals with situations where the act itself is not a legal injury; the plaintiff's injury comes only as a result of what the defendant has done.West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909);Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925);Home Insurance Co. v. Stuart-McCorkle, Inc., 291 Ala. 601,285 So.2d 468 (1973). In these cases, which I believe are more factually similar to the case at hand, the cause of action accrued and the limitations period began to run when the damages were sustained.
The Dorman case is most similar to this case in facts and legal reasoning. There, the soil cracked open several years after the mining had taken place underneath the surface. The Court cited to the observations of Lord Cranworth in the leading case of Bonomi v. Backhouse, 9 H.L.C. 503, 11 Eng.Rep. 825 (1861), to illustrate when the damages were "sustained". Lord Cranworth stated:
 "I think the error in the view which has sometimes been taken upon this subject, is this: It has been supposed that the right of the party whose land is interfered with is a right to what is called the pillars, or the support. In truth his right is a right to the ordinary enjoyment of his land, and till that ordinary enjoyment is interfered with he has nothing of which to complain."
Bonomi, 9 H.L.C. at 512, 11 Eng.Rep. at 828.
When I analogize the issues in Bonomi and Dorman to those of the case at hand, I conclude that the limitations period would not begin to run until "some actual mischief has been done to the upper soil." Dorman, 161 Ala. at 393, 49 So. at 851. In the present case, the "interference with the utility and enjoyment of the superincumbent soil," Dorman, 161 Ala. at 394,49 So. at 851, did not take place until, at the earliest, the McWilliamses noticed in the spring of 1986 that water was seeping from the ground overlying the site of the well. At the latest, the McWilliamses suffered legal injury in July 1986, when this leakage was discovered to be salt water.
While I joined in the Raytheon Co. case, which expressly refused to adopt the "discovery rule," I feel this case is more similar to the facts and reasoning set forth in Dorman. In essence, Dorman adopted a discovery rule for subterranean real property damage cases. Furthermore, other oil *Page 706 
and gas producing states, such as Texas, Arkansas, and Oklahoma, have adopted the discovery rule in similar salt water damage cases. See Bayouth v. Lion Oil Co., 671 S.W.2d 867 (Tex. 1984); Peppers Refining Co. v. Spivey, 285 P.2d 228 (Okla. 1955); Sunray DX Oil Co. v. Thurman, 238 Ark. 789,384 S.W.2d 482 (1964).
In Bayouth, the court stated:
 "An action for permanent damages to land accrues, for limitation purposes, upon discovery of the first actionable injury and not on the date when the extent of the damages to the land are fully ascertainable. Tennessee Gas Transmission Co. v. Fromme, 153 Tex. 352, 269 S.W.2d 336 (1954). An action for permanent damages to land must be brought within two years from the time of discovery of the injury."
671 S.W.2d at 868.
This Court has not had an opportunity to apply the general rules relating to limitations of actions in the context of the escape of deleterious substances from an oil and gas well. Because Alabama has only recently become an oil producing state, I have looked to the law of other oil producing states for guidance. Those courts whose cases I cite have examined their law and have determined that the most logical point at which to begin the running of the limitations period for an action involving permanent injury to realty is when that damage has become apparent and it becomes obvious that the injury is of a permanent character.[1]
The question as to when the statutory limitations period begins to run is generally a question of fact for the jury to determine. Here, there is evidence that the McWilliamses first knew of the water leakage in the spring of 1986; however, there was evidence that the damage became obvious only in July 1986.
The legal justifications for the rule that an action for damage to land accrues, for limitations purposes, upon discovery of the first actionable injury were aptly stated inBonomi, as quoted by this Court in Dorman:
 " 'The contention on the part of the defendant is that the action must be brought within six years after the excavation is made, and that it is immaterial whether any actual damage has occurred or not. The jury, according to this view, would have, therefore, to decide upon the speculative question whether any damage was likely to arise; and it might well be that in many cases they would, upon the evidence of mineral surveyors and engineers, find that no damage was likely to accrue, when the most serious injury afterwards might in fact accrue, and in others find and give large sums of money for apprehended damage, which in point of fact never might arise. This is certainly not a state of the law to be desired.' "
161 Ala. at 394, 49 So. at 851. For the above stated reasons, I hereby concur specially with the opinion of this Court.
[1] The courts of Texas, Oklahoma and Arkansas make a distinction between injuries to realty that are temporary and those that are permanent in nature. In those courts, permanent injuries to land give rise to permanent damages, and temporary injuries give rise to temporary damages. Furthermore, they each have a separate point at which the limitations period is tolled.
 "An action for permanent damages to land must be brought within two years from the time of discovery of the injury. Article 5526, V.A.T.S. Damages for temporary injuries may be recovered for the two years prior to filing suit.
 "The character of an injury as either permanent or temporary is determined by its continuum. Permanent injuries to land result from an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely; the injury must be constant and continuous, not occasional, intermittent or recurrent. Temporary injuries, however, have been found where the injury is not continuous, but is sporadic and contingent upon some irregular force such as rain. Kraft v. Langford, 565 S.W.2d 223 (Tex. 1978)."
Bayouth v. Lion Oil Co., 671 S.W.2d 867, at 868-69 (Tex. 1984).
This distinction, however, is not at issue in this case. *Page 707